**LATHAM & WATKINS LLP**
Kevin M. McDonough
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and WILLIAM SULLIVAN,<br><br>        Plaintiffs,<br><br>   v.<br><br>PEOPLECONNECT, INC., PEOPLECONNECT HOLDINGS, INC., INTELIUS, LLC, PEOPLECONNECT INTERMEDIATE, LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>        Defendants. | CASE NO. 1:24-cv-04227-HB<br><br>Hon. Harvey Bartle, III<br><br>**AMENDED NOTICE OF REMOVAL** |

## D.N.J. LOCAL RULE 10.1 STATEMENT

The plaintiffs in this action are Atlas Data Privacy Corporation, Jane Doe-1,
Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan,
and William Sullivan. The address for Atlas Data Privacy Corporation's principal
place of business is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302. The
street addresses for the remaining plaintiffs are unknown to defendants
PeopleConnect, Inc., PeopleConnect Holdings, Inc., Intelius, LLC, and
PeopleConnect Intermediate, LLC (together, "Defendants"),[1] which are filing this
Amended Notice of Removal. Defendants are unable to locate the precise address of
plaintiffs Jane Doe-1 or Jane Doe-2, whose identities are unknown. And Defendants
are unable to locate the street addresses of the remaining individual plaintiffs who,
the Complaint alleges, are law enforcement officers who work and/or live in New
Jersey without providing any additional address information. Plaintiffs are
represented by Rajiv D. Parikh, Esq. of Pem Law LLP, 1 Boland Drive, Suite 1010,
West Orange, NJ 07053; Kathleen Barnett Einhorn, Esq. of Genova Burns LLC, 494
Broad Street, Newark, NJ 07012; John A. Yanchunis, Esq. and Ryan J. McGee, Esq.
of Morgan and Morgan, 201 N. Franklin St., 7th Floor, Tampa, FL 33602; and the

---

[1] PeopleConnect, Inc., PeopleConnect Holdings, Inc., and PeopleConnect
Intermediate, LLC, do not own, operate, or control any of the services put at issue
in the Complaint, are not proper parties to this litigation, and reserve all rights in that
regard. In addition, all Defendants reserve all rights and defenses, including but not
limited to challenges to personal jurisdiction.

following attorneys from Boies Schiller Flexner LLP: Mark Mao, Esq., and Beko Reblitz-Richardson, Esq., 44 Montgomery St., 41st Floor, San Francisco, CA 94104; James Lee, Esq., 100 SE 2nd St., 28th Floor, Miami, FL 33131; Adam Shaw, Esq., 30 South Pearl Street, 12th Floor, Albany, NY 12207; and Melissa Zonne, Esq. and Samantha Parrish, Esq., 2029 Century Park East, Suite 1520, Los Angeles, CA 90067.

The defendants in this action are PeopleConnect, Inc., PeopleConnect Holdings, Inc., and PeopleConnect Intermediate, LLC, 1687 114th Ave SE, Suite 200, Bellevue, WA 98004, and Intelius, LLC, 375 Camino De La Reina, STE 400, San Diego, CA 92108. Defendants are represented by Kevin M. McDonough, Esq., of Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020; Robert C. Collins III, Esq., of Latham & Watkins LLP (*pro hac vice*), 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611; Jennifer Archie, Esq. and Bradley Baglien, Esq. of Latham & Watkins LLP (*pro hac vice*), 555 Eleventh Street NW Suite 1000, Washington, DC 20004; Craig Carpenito, Esq., of King & Spaulding LLP, 1185 Avenue of the Americas, New York, NY 10036; and Thomas P. Scrivo, Esq., and James DiGiulio, Esq., of O'Toole Scrivo LLP, 14 Village Park Road, Cedar Grove, NJ 07009.

**TO THE CLERK OF THE ABOVE-TITLED COURT, PLAINTIFFS, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants PeopleConnect, Inc., PeopleConnect Holdings, Inc., Intelius, LLC, and PeopleConnect Intermediate, LLC (collectively, "Defendants"), through undersigned counsel, hereby file this Amended Notice of Removal to remove the above-captioned action—with reservation of all defenses and rights—from the Superior Court of New Jersey, Monmouth County, to the United States District Court for the District of New Jersey, Trenton Division, pursuant to 28 U.S.C. §§ 1332(a), 1332(d), 1367, 1441, and 1446. The grounds for removal are as follows:

## INTRODUCTION

1.     This action is one of over 100 lawsuits filed by plaintiff Atlas Data Privacy Corporation ("Atlas") and its counsel asserting violations of New Jersey's Daniel's Law, N.J.S.A. 56:8-166.1, a recently enacted statute intended to help judges, law enforcement officers, child protective investigators in the Division of Child Protection and Permanency, prosecutors, and their immediate family members protect their home addresses and unpublished home telephone numbers from being publicly disclosed online. The statute allows such individuals ("covered persons") to request that a business or website refrain from publicly disclosing this information and provides that the recipient must comply within 10 business days, subject to

"actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation" of the statute. N.J.S.A. 56:8-166.1(c)(1).

2.    Daniel's Law was passed with the very worthy purpose of protecting public servants and ensuring that their private information is removed from the internet. However, the manner in which the claims here were aggregated and asserted was not the best way to advance the purpose of Daniel's Law, and instead appears to try to intentionally overwhelm the recipients of the opt-out requests and thus take advantage of the Law's statutory damages. Specifically, Atlas chose to send *en masse thousands* of automated requests on behalf of covered persons over a short period of time during the winter holidays—apparently for the purpose of making it as difficult as possible to comply with the requests within the ten-business-day statutory period. Then, wrongly assuming that the services placed at issue in the Complaint did not take action in response to the opt-out requests, Atlas immediately aggregated all of the claims into a single lawsuit as an assignee. The resulting Complaint seeks tens of millions of dollars in statutory damages against Defendants.

3.    The partial assignments that Atlas solicited and purportedly obtained have no apparent purpose other than to prosecute this lawsuit in a way that seeks to avoid federal jurisdiction. Even though Atlas purports to bring this case on behalf of nearly 20,000 individuals, each with an alleged claim under Daniel's Law, this case has not been pled as a putative class action as any other comparable case would be—

with the only plausible explanation being that Atlas is seeking to avoid federal jurisdiction under the Class Action Fairness Act ("CAFA"). And Atlas has conveniently been incorporated in Delaware, like Defendants and many of the other defendants Atlas has sued across its 100-plus complaints—as part of an attempt to thwart federal jurisdiction on traditional diversity grounds as well.

4.    Federal jurisdiction cannot be so easily evaded. Where (as here) a plaintiff orchestrates an assignment of claims in an effort to destroy diversity, it is proper for courts to ignore the citizenship of the non-diverse assignee (here, Atlas) and exercise diversity jurisdiction over the action. *See Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990) ("This right [to removal] would be an illusory one indeed if a plaintiff could defeat it by the simple expedient of assigning a fractional interest in the outcome of the suit to an agent performing what is essentially litigation support on a contingent fee basis.").

5.    When Atlas is properly excluded from the citizenship analysis on these grounds, there is complete diversity of citizenship between the individual New Jersey claimants, on the one hand, and Defendants (citizens of Delaware, Washington and/or California for purposes of diversity jurisdiction), on the other. All other jurisdictional requirements are met. Accordingly, this case is subject to removal based on diversity jurisdiction under 28 U.S.C. §1332(a).

6.    In addition, information that Atlas recently revealed about the putative claim assignments makes clear that federal jurisdiction is also proper under CAFA. Where (as here), claimants *partially* assign their interests in legal claims, with some rights (financial, injunctive, or otherwise) still held by the assignors as the true claimants, courts may consider the unnamed assignors for purposes of assessing jurisdiction under CAFA. The result here is that the case is removable as a "mass action" under CAFA, as it satisfies (1) the CAFA class action requirements of (a) minimal diversity and (b) $5,000,000 *aggregate* amount-in controversy; and (2) the CAFA mass action requirements of (a) monetary relief claims of 100 or more persons, and (b) $75,000 *individual* amount-in-controversy. Accordingly, federal jurisdiction is proper under CAFA, 28 U.S.C. § 1332(d).

## PROCEDURAL BACKGROUND

7.    On February 9, 2024, Plaintiffs Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, William Sullivan, and Jane Does 1 and 2 ("Individual Plaintiffs") filed their Complaint against Defendants and unidentified individuals and companies in the Superior Court of New Jersey, Monmouth County. The Complaint, however, names Atlas as lead plaintiff, which purports to assert claims as an assignee on behalf of "approximately 19,756" individuals who are allegedly covered persons under Daniel's Law ("Unidentified Covered Persons").

The state court action was captioned *Atlas Data Privacy Corporation, et al., v. PeopleConnect Inc.*, et al., Docket No. MON-L-000484-24.

8.      According to the Complaint, Atlas "recommended" that the Individual Plaintiffs and Unidentified Covered Persons send suppression requests to various businesses under Daniel's Law. Compl. ¶ 33. The Complaint alleges that the Individual Plaintiffs and Unidentified Covered Persons sent such requests "[s]tarting on or about December 21, 2023." Compl. ¶ 54. The requests were in fact sent *en masse* beginning on or around that day, *by Atlas*, in an enormous email blast—plainly attempting to increase the likelihood that Defendants would be unable to respond to the requests within the ten-business-day period specified in Daniel's Law.

9.      On February 26, 2024, Intelius, LLC was served through its registered agent. On February 29, 2024, counsel for Defendants accepted service of the Complaint on behalf of all Defendants, and subsequently filed an acknowledgement of service. *See* Exhibit A

10.      On March 26, 2024, the Defendants timely removed the action to the U.S. District Court for the District of New Jersey, Trenton Division, on the basis of diversity jurisdiction. *See* Dkt. No. 1.

11.      On April 2, 2024, pursuant to 28 U.S.C. § 292(b), Chief Judge Michael A. Chagares of the United States Court of Appeals for the Third Circuit designated and assigned the action to the Honorable Judge Harvey Bartle, III of the United

8

States District Court for the Eastern District of Pennsylvania, along with approximately 60 other related cases filed by Atlas asserting violations of Daniel's Law against various defendants. *See* Dkt. No. 6. The action was subsequently reallocated to the U.S. District Court for the District of New Jersey, Camden Division. *See* Dkt. No. 8.

12.    After the case was initially removed, the Defendants discovered it also has grounds for removal under CAFA. Through news media coverage concerning Atlas's lawsuits first published on or about April 12, 2024,[2] the Defendants discovered that any assignments made to Atlas by Unidentified Covered Persons would have been only *partial* assignments and that the Unidentified Covered Persons retain a 65% financial interest in the assigned claims. These facts were not previously evident from the face of the Complaint, and they revealed an additional basis for subject matter jurisdiction under CAFA, prompting this Amended Notice.

**LEGAL STANDARD**

13.    A notice of removal requires only "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), that contains "plausible allegation[s]"

_____

[2] *See* Charles Toutant, "140 Lawsuits: Is This Attorney Monetizing Daniel's Law?," LAW.COM NEW JERSEY LAW JOURNAL (April 12, 2024) ("In those cases, should these companies continue to defy the law and financial compensation be awarded, the covered persons will receive 65% of all court awards."); *see also* Matt Friedman, "How a law meant to protect public workers may have created a lawsuit gold mine," POLITICO (April 24, 2024) ("65 percent of the penalty it wins in court goes to the plaintiff.").

that the Court's jurisdictional requirements are satisfied. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014); *see also Farrell v. FedEx Ground Package System, Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020) ("[T]he grounds for removal should be made in 'a short and plain statement,' just as required for pleadings under Fed. R. Civ. P. 8(a)." (citation omitted)); *Matthews v. Bank of America Corp.*, 2020 WL 9786649, at *3 (D.N.J. Feb. 18, 2020) ("Just like the complaint, a notice of removal need only 'contain[] a short and plain statement of the grounds for removal.'" (alteration in original) (quoting 28 U.S.C. § 1446(a)). The notice need not contain "evidentiary support," and the Court "should accept a removing defendant's allegations" in the absence of countervailing evidence by the plaintiff. *Farrell*, 478 F. Supp. 3d at 540 (citing *Dart Cherokee*, 574 U.S. at 87-88). In the event Plaintiffs contest the factual basis for removal, Defendants are then entitled to discovery relating to the claim that diversity jurisdiction exists. *See, e.g.*, *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 102 (3d Cir. 2015) (the party alleging diversity jurisdiction is "entitled to limited discovery for the purpose of establishing that complete diversity exists" when a factual challenge is made); *City of New York v. Permanent Mission of India to the United Nations*, 446 F.3d 365, 367-68 (2d Cir. 2006) (permitting discovery on jurisdictional questions following removal to federal court).

## THIS COURT HAS DIVERSITY JURISDICTION PURSUANT TO
## 28 U.S.C. § 1332(a)

14.    Federal district courts have original diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a).

15.    Each of the requirements of diversity jurisdiction is met here because (i) there is complete diversity of citizenship between Defendants, on the one hand, and the Individual Plaintiffs and Unidentified Covered Persons, on the other hand; (ii) Atlas's citizenship can and should be disregarded for purposes of assessing diversity jurisdiction; (iii) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (iv) all other requirements for removal have been satisfied.

### A.    There is Complete Diversity of Citizenship

16.    This action satisfies the complete diversity requirement of 28 U.S.C. § 1332(a)(1).

17.    Defendants PeopleConnect, Inc. and PeopleConnect Holdings, Inc. are incorporated under the laws of Delaware, with their principal places of business in Bellevue, Washington. These entities are thus citizens of Delaware and Washington for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1).

18.    Defendant PeopleConnect Intermediate, LLC, is a limited liability company organized under the laws of Delaware, with its principal place of business in Bellevue, Washington. PeopleConnect Intermediate, LLC's sole member is

11

PeopleConnect Holdings, Inc., which as noted above, is incorporated in Delaware with its principal place of business in Washington. Thus, for the purposes of diversity jurisdiction under 28 U.S.C. § 1332(a), PeopleConnect Intermediate, LLC is a citizen of Delaware and Washington. *See, e.g., Lincoln Ben. Life Co.*, 800 F.3d at 105 (for purposes of diversity jurisdiction, the citizenship of an LLC is determined by the citizenship of its members (quotation omitted)).

19.    Defendant Intelius, LLC is a limited liability company organized under the laws of Delaware, with its principal place of business in San Diego, California. Intelius, LLC is wholly-owned by PubRec LLC, which is a limited liability company organized under the laws of Delaware with its principal place of business in California. PubRec LLC's sole member is PubRec Holdings, Inc., which is incorporated in Delaware with its principal place of business in California. Thus, Intelius, LLC is a citizen of Delaware and California for purposes of diversity jurisdiction. *See Lincoln*, 800 F.3d at 105.

20.    Each of the Individual Plaintiffs is a current or former New Jersey law enforcement officer, and is alleged currently to be "liv[ing]" and/or "working" in New Jersey:

    a.  Plaintiff JANE DOE-1 is described as a police officer "working in Northern New Jersey." Compl. ¶ 15.

12

b. Plaintiff JANE DOE-2 is described as a correctional police officer who "lives in Northern New Jersey." *Id.* ¶ 16.

c. Plaintiff Edwin Maldonado is described as a member of the Plainfield, New Jersey Police Department. *Id.* ¶ 17.

d. Plaintiffs Scott Maloney and Justyna Maloney are described as police officers "currently serving with the Rahway, New Jersey Police Department." *Id.* ¶ 18.

e. Plaintiff Patrick Colligan is described as a member of the Franklin Township police department in Somerset, New Jersey. *Id.* ¶ 22.

f. Plaintiff William Sullivan is described as a veteran of the New Jersey Department of Corrections, and the President of New Jersey PBA Local 105, the labor union representing correctional police officers. *Id.* ¶ 23.

21. Further, under New Jersey law, "[e]very member of a police department and force shall be a resident of the State of New Jersey while serving in such position." N.J.S.A. 40A:14-122.8.

22. Accordingly, by all appearances, each of the Individual Plaintiffs is a citizen of New Jersey.

23. The Complaint alleges that Atlas is a Delaware corporation with its principal place of business in New Jersey. Compl. ¶ 24. Atlas purports to assert claims as an assignee on behalf of "approximately 19,756" covered persons under

13

Daniel's Law, i.e., the "Unidentified Covered Persons." Atlas was created for precisely this purpose—*i.e.*, as a litigation vehicle for the lawyers who have brought this lawsuit and others like it.

24.    Atlas did not exist when Daniel's Law was passed in November 2020, but it incorporated in Delaware just five months later. *See* Exhibit B. In 2023, Genova Burns, LLC—one of the law firms representing Atlas in this litigation—registered as a lobbyist for Atlas in New Jersey to push for amendments to Daniel's Law to specifically include an assignment provision, which was added to the statute on July 20, 2023. *See* Exhibit C. Atlas alleges that the Unidentified Covered Persons then assigned their claims to Atlas. *See* Compl. ¶ 25. Then, in order to prosecute the claims, Atlas registered to do business in New Jersey on January 12, 2024,[3] and it filed suit against the Defendants and hundreds of other companies less than a month later.

25.    The Complaint offers no plausible alternative explanation for why nearly 20,000 people would assign to Atlas legal claims (whether in whole or in part) that they purportedly have for compensatory and punitive damages. As described in the Complaint, Atlas is merely an "online platform, including an email service," that sends requests to businesses on behalf of covered persons under Daniel's Law that

---

[3]    *See* "Atlas Data Privacy Corporation," Entity ID 0451071286; https://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName.

they not disclose home addresses and/or unpublished phone numbers. Compl. ¶¶ 30-32. There is no apparent reason why anyone—let alone nearly 20,000 people—would choose to give away their right to recover damages to such an entity, particularly if they have allegedly suffered some sort of harm for which compensation would be appropriate.

26.     Certainly, there was no need for these individuals to assign their claims to Atlas or anyone else in order to bring a lawsuit. They each were entitled to bring suit individually in their own name, just like the Individual Plaintiffs did. Moreover, any of the Individual Plaintiffs or Unidentified Covered Persons also could have filed a putative class action complaint and sought to represent all affected individuals through the class action device, which does not require anyone to assign their rights to a third party and instead allows each class member to fully retain the putative value of their own claims. Had such a class action complaint been brought, federal jurisdiction clearly would exist pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

27.     Based on these considerations, and upon information and belief, the alleged assignment to Atlas of approximately 20,000 individuals' claims was done as part of an effort to avoid federal jurisdiction. Therefore, the citizenship of Atlas should be disregarded for purposes of determining diversity.

28.    "A plaintiff may attempt to create or destroy diversity jurisdiction by making a transfer which is an assignment in name only. In either case, the plaintiff tampers with the jurisdiction of the court by artificially affecting it." *Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593, 595 (9th Cir. 1996); *see also* Arthur R. Miller, 13F Fed. Prac. & Proc. Juris. § 3641 (3d ed. 2023) ("Wright & Miller") ("[A] number of federal courts have refused to ignore the possibility that a plaintiff may have engaged in a collusive attempt to manipulate the forum for a particular lawsuit and have retained removed cases on the basis of diversity jurisdiction after they have inquired into the validity of a state law transaction.").

29.    Federal law also provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. Though Section 1359 applies to collusive attempts to *create* diversity jurisdiction, these "informing principles are much the same" when a plaintiff attempts to *destroy* diversity through a collusive assignment. *Attorneys Trust*, 93 F.3d at 595. "Because of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard; that is, the issue of whether the assignment as improperly or collusively made is to be resolved as a simple question of fact." *Grassi*, 894 F.2d at 186 (affirming decision disregarding an entity's citizenship when it had "no legitimate

16

and independent interest in the litigation, but was simply providing litigation support services on a contingent fee arrangement at the behest of the appellants' attorney"); *accord, Attorneys Trust*, 93 F.3d at 598 ("[T]here is no more reason for federal courts to countenance destruction of jurisdiction by the use of straw parties than there is for them to countenance the creation of jurisdiction in that manner . . . . In either event, another party is deprived of a forum to which he would otherwise be entitled, and the jurisdiction which Congress conferred upon the federal courts is manipulated.").[4]

30.    And because Atlas has publicly revealed that it is only a *partial* assignee, with some rights (financial, injunctive, or otherwise) still held by the assignors as the true claimants (*see* fn. 1, *supra*), there is a particularly strong case for disregarding Atlas's citizenship in assessing diversity. *See Attorneys Trust*, 93

---

[4] *3BTech, Inc. v. Wang*, 534 F. Supp. 3d 973, 987 (N.D. Ind. 2021) (dismissing claim for lack of subject matter jurisdiction where plaintiff collusively assigned claim to diverse defendant in order to establish federal diversity jurisdiction); *NPD Mgmt. & Bldg. Servs., Inc. v. Geismar N. Am., Inc.*, 2021 WL 5231870 (E.D. La. Nov. 10, 2021) ("[A] plaintiff may not make a 'collusive' partial assignment of its interests in the subject matter of litigation to destroy valid diversity jurisdiction and to prevent the removal of an action to federal court."); *Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*, 813 F. Supp. 2d 242, 244-45 (D. Mass. 2011) (concluding, after jurisdictional discovery, that assignments were collusive and disregarding assignments for purposes of determining diversity jurisdiction); *JMTR Enters., LLC v. Duchin*, 42 F. Supp. 2d 87, 93 (D. Mass. 1999) (ignoring citizenship of assignee who was assigned claims in attempt to destroy diversity jurisdiction); *Picquet v. Amoco Production Co.*, 513 F. Supp. 938, 942-43 (1981) (same); *see also Renaissance Mktg., Inc. v. Monitronics Int'l, Inc.*, 606 F. Supp. 2d 201, 208 (D.P.R. 2009) ("District courts will not allow removal jurisdiction to be defeated by the plaintiff's destruction of complete diversity of citizenship by the collusive or improper joinder of parties or the assignment of claims.").

F.3d at 597 (holding that courts are "sensitive and concerned by manipulation of their jurisdiction with partial assignments which lack reality and amount to no change in the identity of the party with the real interest in the outcome of the case"); *see also Grassi*, 894 F.2d at 185 ("We accordingly hold that federal district courts have both the authority and the responsibility . . . to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal").

31.     In assessing whether an assignee's citizenship should be disregarded for purposes of diversity, courts are permitted to "look beyond the four corners of a complaint" and independently consider the "factual predicates . . . for [the court's] subject matter jurisdiction." *Erie Ins. Exch. v. Erie Indem. Co.*, 68 F.4th 815, 820 (3rd Cir. 2023); *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

32.     Here, Plaintiffs have improperly joined Atlas as a party to this action solely for the purpose of defeating federal jurisdiction—bringing what is effectively a self-certified class action on behalf of approximately 20,000 New Jersey citizens (all of whom retain majority interest in their individual claims) through a collusive assignment to a Delaware corporation, designed to prevent removal of the action by another Delaware corporation. There is no other plausible legitimate reason to structure the claims—and the litigation as a whole—in such a convoluted manner.

18

In such circumstances, the Court should disregard the citizenship of Atlas in determining whether complete diversity exists.

33.    As noted above, Defendants are citizens of Delaware, Washington, and/or California. Aside from Atlas, the only parties identified in the Complaint are citizens of New Jersey; none is alleged to be a citizen of Delaware, Washington or California.

34.    Accordingly, complete diversity of citizenship exists under 28 U.S.C. § 1332(a)(1).[5]

**B.    The Alleged Amount in Controversy Exceeds $75,000**

35.    Based on allegations in the Complaint, the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a).

---

[5] If the Court nevertheless still questions diversity of citizenship, it should—*before* ruling on any motion to remand—order discovery of Atlas related to the purported assignments, including on questions such as the size of the interest assigned, whether the assignee had any interest in the matter before assignment, whether the assignor and assignee had separate counsel, whether the assignee's attorney is controlling the litigation, the timing of the assignment, whether the assignment could be considered a sort of contingent fee arrangement, and whether there was a strong likelihood of prejudice against the defendant). *See Grassi*, 894 F.2d at 186 (describing factors to consider in assessing collusive assignment); *Cambridge Place*, 813 F. Supp. 2d at 244 (same); *NPD Mgmt.*, 2021 WL 5231870 at *4 ("[I]t is the reality of an assignment, not the term used to describe it, that courts should look to determine whether it was collusive." (alteration in original)).

19

36.    For purposes of removal, the amount in controversy is first assessed by reviewing the allegations of the operative complaint. Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant[s']' notice of removal may do so." *Dart Cherokee*, 574 U.S. at 84; *see also Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 158 (3d Cir. 2013) (court considers allegations in both complaint and notice of removal). Evidentiary submissions are not required to establish the amount in controversy. *Dart Cherokee*, 574 U.S. at 84; *see also Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 782 n.2 (3d Cir. 2020) (when "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy" (alteration in original) (quoting *Dart Cherokee*, 574 U.S. at 89)).

37.    Where the amount in controversy exceeds $75,000 for any single plaintiff, the Court may exercise jurisdiction over the entire action under § 1332(a). As the Supreme Court has made clear, "where the other elements of [diversity] jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005); *see also*

20

*Burgess v. Bennet*, 2021 WL 1050313, at *5 n. 9 (D.N.J. Mar. 19, 2021) ("[A]though these particular plaintiffs' claims may not reach the amount in controversy, so long as one plaintiff in this case satisfies the jurisdictional amount, this Court may exercise supplemental jurisdiction over the remaining plaintiffs' claims.").

38.    Plaintiffs do not allege a specific dollar amount of damages in the Complaint, but seek numerous forms of relief—including actual damages (not less than liquidated damages of at least $1,000 "for each violation" of Daniel's Law), punitive damages, temporary and permanent injunctive relief, litigation costs, attorneys' fees, and both pre and post-judgment interest—based on Defendants' alleged failure to timely complete the suppression requests within the time period required by Daniel's Law. These allegations are entirely without merit, and Defendants deny any and all liability—indeed, the services placed at issue in the Complaint immediately took action to suppress the information contained in the opt-out requests such that no violation of Daniel's Law occurred. But for purposes of this Amended Notice of Removal, taking Plaintiffs' allegations as true and correct, the amount in controversy readily exceeds $75,000.

39.    At the outset, the $75,000 threshold is easily satisfied by Atlas's alleged claims. Atlas purports to assert claims on behalf of 19,756 covered persons under Daniel's Law, each of whom claims at least $1,000 "for each violation" of the

statute. Compl. ¶ 66. Even taking the "minimum" amount by assuming a single "violation" per individual, the damages sought by Atlas alone total over $19 million.

40.    Even putting aside Atlas's claims, the "possible" amount in controversy for each of the Individual Plaintiffs exceeds $75,000—only one of whom needs to exceed that threshold for the Court to exercise jurisdiction over the entire action. Each Individual Plaintiff seeks (i) "actual damages, not less than the liquidated damages under Daniel's Law, at '$1,000 for each violation,'" (ii) "an additional amount in punitive damages, to be determined by the Court, for 'willful noncompliance' as allowed under Daniel's Law," (iii) "reasonable attorneys' fees," and (iv) "injunctive relief." Compl. ¶ 66. Adding together potential statutory, actual, and punitive damages that the Complaint seeks, as well as the value of the claimed injunctive relief and attorneys' fees, each Plaintiff has put more than $75,000 in controversy.

41.    As noted above, the Complaint seeks statutory damages of $1,000 for "each violation" of Daniel's Law. The Complaint does not specify the number of "violations" claimed, but alleges that (i) protected information for the Individual Plaintiffs "remains available or viewable within a searchable list or database" on services allegedly owned by Defendants (Compl. ¶ 63); and (ii) "each" failure to "cease the disclosure or re-disclosure" of that information "constitute[s] a separate violation under the law." *Id.* ¶ 64. The Complaint thus appears to allege multiple

22

violations for each of the Individual Plaintiffs. Were this theory accepted, the statutory damages alone could cross the $75,000 threshold for each Individual Plaintiff.[6]

42.    Plaintiffs also seek actual damages and may try to seek recovery for the costs of measures they have allegedly taken for their personal safety, or for alleged anxiety or emotional distress. Such alleged damages would also contribute to the total amount of compensatory damages sought. *See, e.g., Yucis*, 813 Fed. App'x at 782 n. 2 (holding that the plaintiff plausibly alleged more than $75,000 in controversy based on allegations that plaintiff experienced "pain, suffering, embarrassment, and humiliation" as a result of sexual harassment, as well as incurred attorneys' fees).

43.    In addition to statutory and actual damages, the Complaint also seeks punitive damages for "willful noncompliance" with Daniel's Law on behalf of each Individual Plaintiff. Compl. ¶ 66. In the Third Circuit, claims for punitive damages

---

[6] The Complaint does not explain its "for each violation" theory of damages, *i.e.*, by specifying how many violations the Individual Plaintiffs claim due to the alleged "ongoing" exposure of their personal information. Defendants dispute any interpretation of Daniel's Law that would allow a single plaintiff to recover statutory damages for "multiple violations" of the law. Nonetheless, because no court has ruled on the issue, the potential for additional violations per person should be considered in determining the amount in controversy. *See, e.g., Peatry v. Bimbo Bakeries USA, Inc.,* 393 F. Supp. 3d 766, 769–70 (N.D. Ill. 2019) (finding removal proper of a complaint asserting violations of the Illinois Biometric Privacy Act because plaintiff did not show that recoverable amount based on "per violation" theory was "legally impossible").

23

made in good faith "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008) (citation omitted); *see also Ifill v. CVS Pharmacy,* 2021 WL 486884, at *2 (D.N.J. Feb. 9, 2021) (denying motion to remand on grounds that the plaintiff's request for punitive damages satisfied the amount in controversy requirement, because even assuming a single-digit multiplier a plaintiff would only need to recover compensatory damages above $7,500 to bring the total amount above $75,000); *Valenta v. BI Inc*., 2021 WL 7185785, at *5 (W.D. Pa. Oct. 8, 2021) ("Because Plaintiff's request for punitive damages is appropriately made, this is generally sufficient to satisfy the amount in controversy.").

44.      Further, as a matter of New Jersey law, any plaintiff seeking punitive damages is entitled to request up to five times the liability found for compensatory damages "*or $350,000, whichever is greater*." N.J.S.A. 2A:15-5.14(b) (emphasis added). Thus, the mere fact that the Individual Plaintiffs are seeking punitive damages presumptively satisfies the $75,000 jurisdictional amount for each of the Individual Plaintiffs. *See, e.g.*, *Valenta*, 2021 WL 7185785, at *5 ("Because Plaintiff's request for punitive damages is appropriately made, this is generally sufficient to satisfy the amount in controversy").

24

45.     The Complaint also seeks to recover the costs of suit, including "reasonable attorneys' fees." Compl. ¶ 66. For the purposes of removal, the Third Circuit has held that in calculating the amount in controversy, courts "must consider potential attorneys' fees" where they are recoverable under a statutory cause of action (as they are here). *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997); *see also Venuto v. Atlantis Motor Grp, LLC*, 2017 WL 4570283, at *3 (D.N.J. Oct. 13, 2017) (noting that "reasonable attorneys' fees . . . must be counted if they are available under New Jersey state law" for "purposes of calculating the amount in controversy." and denying motion to remand where it was "not a legal certainty that plaintiffs cannot recover more than $75,000").

46.     A typical rule of thumb in the Third Circuit in calculating attorneys' fees to determine the amount in controversy is 30 percent of the compensatory and/or punitive damages. *See, e.g., Rodriguez v. Burlington County Corrections Dept.*, 2015 WL 790521, at *2 (D.N.J. Feb. 25, 2015) ("The Third Circuit has noted that attorney's fees can be estimated to be as high as 30% of the final judgment."). As outlined above, the Complaint alleges compensatory damages and punitive damages above $75,000, and increasing those damages by another 30 percent to account for attorneys' fees only reinforces that the amount in controversy is satisfied.

47.     Finally, the Individual Plaintiffs seek broad injunctive relief tied to Defendants' ongoing compliance with Daniel's Law. In the Third Circuit, the value

25

of injunctive relief may be considered in determining the amount in controversy and is measured by the "value of the interest sought to be protected by the equitable relief requested." *Hunter v. Greenwood Trust Co.*, 856 F. Supp. 207, 219 (D.N.J. 1992); *In re Corestates Trust Fee Litig.*, 39 F.3d 61, 65 (3d Cir. 1994) ("In injunctive actions, it is settled that the amount in controversy is measured . . . by the value to the plaintiff to conduct his business or personal affairs free from the activity sought to be enjoyed." (citation omitted)). Here, the interest the Complaint putatively seeks to protect is the interest of the Individual Plaintiffs and the Unidentified Covered Persons in their physical safety and freedom from threatening communications. *See* Compl. ¶¶ 15-22 (alleging that each of the Individual Plaintiffs face threats to their safety and/or threatening phone calls or text messages based on the disclosure of their home addresses and unpublished phone numbers). While Defendants emphatically reject any allegation that they have engaged in conduct that has endangered anyone, the Individual Plaintiffs and Atlas would surely contend that the value of this interest exceeds $75,000 for each of the Individual Plaintiffs and Unidentified Covered Persons.

48.    Because the parties are completely diverse and the amount in controversy exceeds $75,000, the requirements of diversity jurisdiction are satisfied.

26

## THIS COURT INDEPENDENTLY HAS JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

49.    In addition, or in the alternative, to finding that this case is removable under 28 U.S.C. § 1332(a), removal is proper because the instant case is a "mass action" under CAFA, and all other requirements for CAFA jurisdiction are satisfied.

50.    "Congress enacted [CAFA] to facilitate adjudication of certain class [and mass] actions in federal court." *Dart Cherokee*, 574 U.S. at 89. CAFA's "provisions should be read broadly," and there is a "strong preference" that interstate actions like this one "should be heard in a federal court if properly removed by any defendant." *Id.*; *see also Portillo v. Nat'l Freight, Inc.*, 169 F. Supp. 3d 585, 589 (D.N.J. 2016) ("CAFA dramatically expanded the role of the federal judiciary in class [and mass] action litigation, and expressed a clear preference for qualifying class [and mass] actions to be entertained in federal forums."). In particular, CAFA allows federal courts to exercise jurisdiction over "mass actions," defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," 28 U.S.C. § 1332(d)(11)(B)(i), where certain requirements are satisfied. Specifically, jurisdiction over such actions is proper if: (1) any plaintiff is a citizen of a state different from any defendant (i.e., minimal diversity exists), and (2) the amount in controversy exceeds $5 million in the aggregate and $75,000 for

27

individual plaintiffs. 28 U.S.C. §§ 1332(d)(2), (d)(6), (d)(11)(B)(i). These requirements are satisfied here.

### A.    The Case is a Mass Action

51.    Under CAFA, "the term 'mass action' means any civil action . . . in which *monetary relief claims of 100 or more persons* are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact[.]" 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).

52.    The "question is not whether 100 or more plaintiffs answer a roll call in court, but whether the '*claims*' advanced by 100 or more persons are proposed to be tried jointly." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) (emphasis added). "Where a single complaint joins more than *100 separate claims* involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial." *Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 329 (3d Cir. 2017) (emphasis added).

53.    Here, Atlas alleges that it is the assignee of monetary relief claims of "approximately 19,756 individuals"—well in excess of the 100-claim threshold—but purports to assert them collectively in the Complaint. *See* Compl., ¶ 25. As described above, however, Atlas is only a *partial* assignee of the claims being asserted on behalf of these individuals—meaning that each of the 19,756 assignors retain an interest in individual "monetary relief claims" being asserted in the action.

28

Where a person assigns away only part of his claim, that person continues to be a "real part[y] in interest" to any litigation brought to vindicate that claim. *Grassi*, 894 F.2d at 185. This is precisely the case here.

54.     Further, in the context of evaluating whether a putative class meets Rule 23's numerosity requirement, the Third Circuit has held that assignors of partial interests in claims "can be counted as class members." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 251-52 (3d Cir. 2016), *as amended* (3d Cir. Sept. 29, 2016) (in the context of partial assignments, both the assignors and assignees are appropriately considered to be members of the class). Similarly here, in determining the number of "monetary relief claims" being asserted in this action, the Court should consider the 19,756 individuals holding interests in individual claims for relief under Daniel's Law.

55.     That Atlas did not name each of the 19,756 assignors in the case caption does not change the fact that Atlas is only entitled to bring each claim alleged in the Complaint as the assignee for a corresponding and specific assignor, each of whom retains an interest in the claims being asserted in this litigation.

56.     Thus, because Atlas is suing to recover for the "monetary relief claims of 100 or more persons" in a single lawsuit, 28 U.S.C. § 1332(d)(11)(B)(i), the mass-action numerosity element is satisfied.

## B.      Minimal Diversity is Satisfied

57.    For purposes of establishing federal jurisdiction, CAFA requires only minimal diversity—that is, at least one plaintiff must be a citizen of a state different from the state of citizenship of any named defendant. 28 U.S.C. § 1332(d)(2)(A).

58.    Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). For the purpose of determining minimal diversity under CAFA, a limited partnership is deemed an "unincorporated association." *See, e.g., Kotsur v. Goodman Global, Inc*., 2014 WL 6388432, at *3 n.2 (E.D. Pa. Nov. 17, 2014) (applying § 1332(d)(10) to limited partnership); *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032 & n.13 (noting in concurring opinion that limited partnership would be an "unincorporated association" under CAFA). Defendants PeopleConnect, Inc. and PeopleConnect Holdings, Inc. are incorporated under the laws of Delaware, with their principal places of business in Bellevue, Washington. PeopleConnect Intermediate, LLC, is a limited liability company organized under the laws of Delaware, with its principal place of business in Bellevue, Washington. Defendant Intelius, LLC is a limited liability company organized under the laws of Delaware, with its principal place of business in San Diego, California. The Defendants are therefore citizens of Delaware, Washington, and/or California under 28 U.S.C. § 1332(d)(10).

59.     As discussed above, based on the face of the Complaint, each of the Individual Plaintiffs is a citizen of New Jersey. *See supra ¶¶* 20-22.

60.     Because the Defendants' citizenship (Delaware, Washington, and/or California) is different from the citizenship of each of the named plaintiffs (New Jersey), the minimal diversity requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2)(A).

**C.     The Alleged Individual Amount in Controversy Exceeds $5 Million in the Aggregate and $75,000 for Each Claimant**

61.     CAFA provides that, "[i]n any class [or mass] action, the claims of the individual class members [or plaintiffs] shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(6), (d)(11)(A). In the case of mass actions (as opposed to traditional class actions), there is an additional requirement that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]," which requires that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(d)(11)(B)(i). In other words, CAFA confers federal jurisdiction over a mass action where the aggregate amount in controversy exceeds $5 million, and over individual plaintiffs participating in that mass action where their individual amount in controversy exceeds $75,000.

62.     As stated above, the Defendants deny the validity and merit of Plaintiffs' claims. Nevertheless, for purposes of setting forth grounds for this Court's jurisdiction—and without conceding that Plaintiffs are entitled to damages or any relief whatsoever—it is apparent that both amount-in-controversy requirements for CAFA mass action removal are met here.

63.     As to the aggregate amount in controversy, the $5,000,000 threshold is satisfied by the Complaint's request for statutory damages under Daniel's Law. Atlas purports to assert claims on behalf of 19,756 covered persons, on top of the claims of the eight named plaintiffs, all for at least $1,000 "for each violation" of the statute. At a minimum, looking simply at the statutory damages sought in the Complaint, the "aggregate" damages sought in the Complaint totals over $19.5 million.

64.     And as to the "individual" amount in controversy, as stated and explained above, the "possible" damages for each of the Individual Plaintiffs (and the Unnamed Covered Persons) readily exceeds $75,000. *See supra* at ¶¶ 40-47. Adding together potential statutory, actual, and punitive damages that the Complaint seeks, as well as the putative value of injunctive relief and attorneys' fees, the individual jurisdictional threshold has been met.

## ALL PROCEDURAL REQUIREMENTS ARE SATSIFIED

65. **Removal is timely.** As noted above, Intelius, LLC was served through its registered agent on February 26, 2024. Counsel for Defendants subsequently agreed to waive service of the Complaint on behalf of all Defendants on February 29, 2024, and filed an acknowledgement of service on the state court docket on March 1, 2024. On March 26, 2024, the Defendants timely removed the action to this Court within 30 days of service on each of the Defendants. *See generally Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

66. This Amended Notice relies on information concerning the nature of Atlas's putative claims and the assignments underlying those claims discovered by the Defendants on or about April 12, 2024. Accordingly, this Amended Notice is timely because it is being filed within 30 days "after receipt by the defendant . . . of a copy of . . . other paper from which it may be first ascertained that the case" is removable under CAFA's mass action provisions. 28 U.S.C. § 1446 (b)(3); *see also Portillo*, 169 F. Supp. 3d at 593 (removal under CAFA was timely when made within 30 days of receipt of a "litigation document subsequent to the initial pleading" that showed a basis for removal).

67. **Removal is to the proper court**. Because Plaintiffs' Complaint was filed in the Superior Court of New Jersey, Monmouth County, the Defendants properly removed this action to the United States District Court for the District of

New Jersey, Trenton Division which encompasses the location in which the Complaint was initially pending in state court (i.e., Monmouth County). *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"). Following removal, the case was subsequently designated and assigned to the Honorable Judge Harvey Bartle, III of the United States District Court for the Eastern District of Pennsylvania, along with approximately 60 other related cases filed by Atlas asserting violations of Daniel's Law against various defendants. *See* Dkt. No. 6. The action was subsequently reallocated to the U.S. District Court for the District of New Jersey, Camden Division. *See* Dkt. No. 8.

68.    **Rule 11.** This Amended Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

69.    **All pleadings and process are attached.** Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Summons, Complaint, Acknowledgement of Service of Process, and other pleadings are attached hereto as Exhibit A. Exhibit A constitutes all of the process, pleadings, and orders served on Defendants to date in the state court action.

34

70.    **Notice is being provided forthwith**. Pursuant to 28 U.S.C. § 1446(d), upon filing this Amended Notice of Removal, the undersigned will promptly give written notice of such filing to Plaintiffs through their counsel of record.

**WHEREFORE**, Defendants hereby remove the above-captioned action from the Superior Court, Monmouth County and request that further proceedings be conducted in this Court as provided by law.

Dated: April 30, 2024

/s/ *Kevin M. McDonough*

Kevin M. McDonough (ID: 41892005)
Latham & Watkins LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com

Robert C. Collins (*pro hac vice* )
Latham & Watkins LLP
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: robert.collins@lw.com

Jennifer C. Archie (*pro hac vice*)
Bradley M. Baglien (*pro hac vice*)
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304

Telephone: (202)637-2205
Email: jennifer.archie@lw.com
       bradley.baglien@lw.com

Craig Carpenito, Esq.
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone: (212) 556-2142
Email: ccarpenito@kslaw.com

Thomas P. Scrivo (ID:029101989)
James DiGiulio (ID: 013582006)
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, NJ 07009
Telephone: (973) 239-5700
Email: tscrivo@oslaw.com

*Attorneys for Defendants*